TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-97-00606-CV


NO. 03-97-00792-CV






Save Our Springs Alliance, Inc. and El Concilio, Appellants




v.




Austin Independent School District, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT


NO. 97-09085, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING 







 This case requires us to interpret the meaning and scope of the real estate exception
to the Texas Open Meetings Act. See Tex. Gov't Code Ann. § 551.072 (West 1994). Appellants
Save our Springs Coalition, Inc. and El Concilio sued appellee Austin Independent School District
("the District") for violating the Texas Open Meetings Act by discussing in closed session topics
that did not fall within the real estate exception. See Tex. Gov't Code Ann. §§ 551.001-.146
(West 1994 & Supp. 1998) ("the Act"). The trial court granted summary judgment in favor of
the District. We will affirm the trial court's judgment.



BACKGROUND

 In mid-1996, the District began conducting meetings and discussions to decide
where to locate new schools, including two new middle schools. From November of that year
until March of the next, the District conducted a series of public hearings to solicit input regarding
the selection of the sites for such schools. These public discussions resulted in the selection of
two "relief areas," zones the District determined to have the greatest need for new middle schools.

 In May 1997, the District conducted a series of closed meetings to consider the
available properties within the two relief areas. Over the course of the closed meetings, the
District culled the available properties until two were left in one area and three were left in the
other. At that point, the District conducted another public hearing to receive comments on the
narrowed list of available properties. The District then notified the public that it would meet in
closed session on August 11, 1997 to consider the middle school site selection. The District met
in closed session and then reopened the public meeting. At the public meeting, the District voted
and selected one property in each relief area.

 Appellants, citizen groups advocating preservation of the environment and certain
neighborhoods in Austin, sued the District, alleging the District violated the Act by discussing
middle school site selection in closed session. Appellants sought a declaration that the District
had violated the Act and that the District's subsequent vote was void or voidable. They also
sought a temporary injunction, permanent injunction, and writ of mandamus forcing the District
to, among other things, reverse its prior action arising out of the allegedly improper closed
discussions.

 The trial court conducted a hearing on the request for a temporary injunction and
denied the request. Appellants pursued an interlocutory appeal to this Court. (1) While the
interlocutory appeal was pending, the District filed a motion for summary judgment, which the
trial court granted. (2) Appellants challenge this final judgment in seven points of error. (3) The
appeals have been combined for submission and consideration.


DISCUSSION

 The Act generally requires governmental entities to make their meetings open to
the public, see Act § 551.002 (West 1994), but contains several exceptions, see Act §§ 551.071-.085 (West 1994 & Supp. 1998). One of those exceptions authorizes public entities to "conduct
a closed meeting to deliberate the purchase, exchange, lease, or value of real property if
deliberation in an open meeting would have a detrimental effect on the position of the
governmental body in negotiations with a third person." Act § 551.072 (West 1994). The
District relied upon this exception when it notified the public that it planned to meet in closed
session on August 11, 1997 to discuss middle school site selection.

 Appellants' seven points of error attacking the final judgment fall into two
categories: three concern rulings the trial court made on certain evidence appellants introduced
at different phases of the proceedings and four concern the propriety of the trial court's ruling on
the merits of the motion for summary judgment. We will first address points of error four, five,
and six, those concerning the trial court's evidentiary rulings.

 At the summary-judgment hearing, appellants attempted to introduce tape
recordings of the closed session discussions. The trial judge denied admission of the tapes. The
trial court also refused to listen to the tapes at that time.

 The trial court did not err in refusing to admit evidence tendered at the summary-judgment hearing. The nonmovant in a summary-judgment proceeding may not, without leave
of court, submit proof later than seven days before the hearing. Tex. R. Civ. P. 166a(c). 
Appellants did not obtain leave of court to submit the evidence late. Furthermore, appellants did
not seek a delay, as provided for in Texas Rule of Civil Procedure 166a(g), to obtain affidavits
or depositions that would controvert the District's proof. A party may not present new evidence
at the summary-judgment hearing. Texaco, Inc. v. Central Power & Light Co., 925 S.W.2d 586,
589 (Tex. 1996); State v. Easley, 404 S.W.2d 296, 297 (Tex. 1966) (holding trial court erred in
admitting and considering extrinsic evidence at summary-judgment hearing). Therefore, the trial
court's refusal to admit the late-proffered tape recordings at the hearing on the motion for
summary judgment was not error.

 Furthermore, the trial court did not err in refusing to listen to the tape recordings
before ruling on the motion for summary judgment. When a trial court hears a motion for
summary judgment, the court need consider only the record properly before it. See, e.g., WTFO,
Inc. v. Braithwaite, 899 S.W.2d 709, 721 (Tex. App.--Dallas 1995, no writ) (citing Evans v.
Conlee, 741 S.W.2d 504, 510 (Tex. App.--Corpus Christi 1987, no writ)).

 Because appellants did not properly present the tape recordings in a form
appropriate for consideration in a summary-judgment proceeding, we cannot say the trial court
erred in refusing to admit or review the evidence. We overrule points of error four, five, and six.

 We now turn to the points of error concerning the propriety of the court's ruling
on the merits of the motion for summary judgment. Points of error one through three focus on
whether the District's closed session discussion on August 11, 1997 fell within the real estate
exception. In their first two points, appellants contend the District's discussion of the potential
middle school sites in closed session did not fall within the exception because: (1) the District
already owned one of the potential sites in one relief area, and (2) the District had already entered
into an earnest money arrangement on one of the potential sites in the other relief area. According
to appellants, the District was no longer involved in negotiations with respect to these two
properties when it discussed them in the closed meeting; thus, the District's closed discussion of
all of the properties fell outside the real estate exception. In their third point, appellants advocate
a similar argument that the District's discussion in closed session of social and environmental
issues tied to site selection, specifically the effect of locating a school outside minority
neighborhoods and over the Edwards Aquifer, did not fall within the real estate exception because
it did not concern price negotiations.

 Central to each of these contentions is appellants' argument that the real estate
exception authorizes closed session discussion of only the amount of money an agency will pay
for a certain piece of property. Resolution of this issue requires us to consider the meaning and
scope of the words "deliberate the purchase, exchange, lease, or value of real property." No
Texas court has construed the real estate exception; the meaning and scope of the exception is a
matter of first impression and is a question of law we review de novo. See In re Humphreys, 880
S.W.2d 402, 404 (Tex. 1993).

 Appellants argue, and we acknowledge, that the exceptions in the Act are narrowly
drawn. See Acker v. Texas Water Comm'n, 790 S.W.2d 299, 300 (Tex. 1990) (citing Cox Enters.
v. Board of Trustees of Austin Indep. Sch. Dist., 706 S.W.2d 956, 958 (Tex. 1986)). We do not
agree, however, that the legislature cast the real estate exception as narrowly as appellants
suggest. 

 A federal court has opined, and we agree, that the legislature enacted the real estate
exception to prevent an agency from having to "telegraph its punch" in an open meeting to the
detriment of the taxpayers. See Finlan v. City of Dallas, 888 F. Supp. 779, 787 (N.D. Tex.
1995). Open discussion of the amount of money an agency will offer or accept for a single piece
of property is not the only discussion that concerns the "purchase, exchange, lease, or value of
real property" or that will "telegraph the agency's punch." "Value" includes not only "monetary
worth," but also "relative worth, utility, or importance." Webster's Third New International
Dictionary 2530 (Philip B. Gove ed., 1986). When an agency is considering purchasing one of
several pieces of property, it may determine the "value" of the various properties based on factors
other than purchase price. Open discussion of an agency's subjective valuation of properties, even
if expressed in nonmonetary terms, might "telegraph the agency's punch" by making the agency's
preference known to sellers who might then demand more money for the preferred properties than
they would if they thought they were competing equally with other sellers. This consideration
does not evaporate simply because the agency already owns one of the properties and has
negotiated the price of another. So long as the agency deliberates the value of those properties
in comparison to the value of some other property, the price of which the agency has not
negotiated, and deliberating in open session would detrimentally affect subsequent negotiations,
the deliberations fall within the scope of the real estate exception. Therefore, appellants'
argument that closed session discussion of nonmonetary attributes of property violates the Act is
without merit.

 The issue remains, however, whether the District established that open deliberation
of the value of the properties would have had a detrimental effect on the District's negotiations
with a third person. See Act § 551.072. The District contended in its motion for summary
judgment that no material fact issue existed as to whether open discussion of the pros and cons
of the two or three available properties in each relief zone would have had a detrimental effect on
the District's subsequent negotiations, if any ensued. This was one of several theories advanced
by the District in its motion for summary judgment. The trial court did not state the basis for its
ruling in the summary-judgment order. Under these circumstances, we must uphold the judgment
on any valid theory asserted in the motion. Rogers v. Ricane Enters., Inc., 772 S.W.2d 76, 79
(Tex. 1989). We will examine the summary-judgment record as it pertains to whether open
deliberation would have had a detrimental effect on the District's negotiations with third parties.

 In reviewing the summary judgment, we apply well-settled standards of review: 
(1) the District must have shown there is no genuine issue of material fact and that it was entitled
to judgment as a matter of law; (2) in deciding whether there was a disputed material fact issue
precluding summary judgment, we must take evidence favorable to the appellants as true; and (3)
we must indulge every reasonable inference in favor of the appellants and resolve any doubts in
their favor. See Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985). 

 In its summary-judgment proof, the District provided a transcript of testimony
given at the temporary injunction hearing. The testimony was that of a person who had been
present at the closed meetings. When asked about the potential effect of open discussion of the
District's evaluation of specific sites, the witness testified that if a landowner got the impression
that the District preferred his or her property over other property, it would be more difficult for
the District to bargain with that landowner in terms of price. Another representative of the
District averred,


It is my opinion that if there were public knowledge about the Board's evaluation
of specific sites or which sites were good or high in the Board's estimation, and
which sites were low in the Board's estimation, that this information would have
adversely affected the District's bargaining position in relation to tracts being
acquired from third parties.


In my experience, if a landowner knows that the District is very interested in the
landowner's property, it is more difficult for the District to obtain a favorable price
for that property. During the period of time between February and August 11,
1997, the District always had several sites under consideration for each relief area
in order to have opportunities to bargain for the parcels, and to allow the Board to
make a selection based upon the needs of the District.


* * *

Until the Board of Trustees made its decision concerning [the two selected sites]
during the open meeting on August 11, 1997, all of the sites that had been
deliberated on by the Board for middle schools for each respective relief area were
on the table and available for consideration by the Board . . . .



 The District's summary-judgment proof also includes statements suggesting that
the District was not involved in any negotiations on at least one of the potential sites in each relief
area. That is, the District already owned one of the potential sites in one relief area and it had
entered into an earnest money contract locking in the purchase price for a site in the other relief
area. The proof includes statements by District representatives that open discussion about those
two sites in particular would not impede any subsequent negotiations regarding those properties
because there were no subsequent negotiations to be had with respect to those two properties. The
proof also reveals that, in the end, the District chose the two sites it had already purchased or
contracted to purchase.

 Appellants contend this proof pertaining to those two particular properties reveals
that the District's closed session discussions were unauthorized. We disagree. The District's
proof reveals that the District had not selected the middle school sites for the two relief areas
before the closed discussions. Furthermore, the proof reveals that the price of all but two of the
potential sites had not been negotiated before the closed meetings. Because the District was
considering locating the middle schools on properties other than the ones already negotiated, the
closed session discussion regarding the relative feasibility and desirability of all of the potential
sites would have had a detrimental effect on future negotiations about the non-negotiated
properties, according to two District representatives. Nothing in the District's proof suggests the
District had already chosen the sites before the closed meetings or that the District discussed other
sites as a subterfuge. For that reason, that the District ultimately selected the pre-negotiated sites
is of no consequence. The District established that its closed discussions satisfied the second
element of the real estate exception. The District's proof was credible, free from inconsistencies,
and capable of being readily controverted. We must, therefore, look to the appellants' response
to determine if they controverted the District's proof on this issue. See Tex. R. Civ. P. 166a(c);
Casso v. Brand, 776 S.W.2d 551, 558 (Tex. 1989); City of Houston v. Clear Creek Basin Auth.,
589 S.W.2d 671, 678-79 (Tex. 1979).

 Appellants filed a response to the District's motion for summary judgment, but they
did not submit any affidavits or proof in support of their response. Based on the summary-judgment record before us, we conclude there was no genuine issue of material fact and that the
District established as a matter of law that disclosure of its closed session deliberations would have
had a detrimental effect on future negotiations regarding some of the properties discussed. 
Accordingly, we overrule appellants' first three points of error. (4)

 In their seventh point of error, appellants argue generally that the trial court erred
in granting the summary judgment because material fact issues existed about exactly what the
District discussed in closed session. When we examined the propriety of summary judgment
above, we viewed all the evidence in appellants' favor and held that even the topics alleged to
have been discussed did fall within the real estate exception. Furthermore, we have held that the
trial court did not err in refusing to consider the testimony and tape-recordings as evidence at the
summary-judgment proceeding because appellants neither presented it timely nor attempted to
delay the proceedings by affidavit. Appellants do not raise any issues in their seventh point of
error that we have not already addressed in resolving their previous points of error. Based on the
summary-judgment record properly before us, no material fact issues are present. Accordingly,
we overrule point of error seven.

 The only issues left to address are the appellants' challenge of several rulings the
trial court made at the temporary injunction hearing. (5) The District has filed a motion to dismiss
the interlocutory appeal of the denial of the temporary injunction as moot based on the fact that
the trial court has rendered a final judgment in the cause. The trial court's final judgment
rendered the appeal of the temporary injunction moot. See Isuani v. Manske-Sheffield Radiology
Group, P.A., 802 S.W.2d 235, 236 (Tex. 1991). We conclude the District's motion is
meritorious and we grant the motion.


CONCLUSION

 Having overruled all of appellants' points of error, we affirm the judgment of the
trial court. We dismiss the related interlocutory appeal as moot.



 _____________________________________________

 Lee Yeakel, Chief Justice

Before Chief Justice Yeakel, Justices Aboussie and Jones

Cause No. 03-97-00792-CV Affirmed;

Cause No. 03-97-00606-CV Dismissed as Moot


Filed: July 2, 1998

Publish
1. The appeal from the denial of the temporary injunction is designated Cause Number 03-97-00606-CV.
2. The Texas Civil Practice and Remedies Code provides that an interlocutory appeal of the
denial of a temporary injunction stays "the commencement of a trial in the trial court." See Tex.
Civ. Prac. & Rem. Code Ann. § 51.014(b) (West Supp. 1998). Appellants did not argue before
the trial court, nor do they argue on appeal, that the summary-judgment proceedings were the
equivalent of a "trial" as the term is used in section 51.014(b), and we express no opinion on the
matter.
3. The appeal from the final judgment is designated Cause Number 03-97-00792-CV.
4. Appellants urge us to determine anew whether open discussion would have had a detrimental
effect on subsequent negotiations. We decline to do so, concluding that this is a fact-intensive
question properly addressed at the trial court level.
5. For example, appellants contend the trial court erred at the temporary injunction hearing by
refusing to admit certain live testimony and tape recordings in evidence, refusing to allow them
to include the tape recordings in a bill of exceptions at the temporary injunction hearing, and
"balancing the equities" at the temporary injunction hearing.



 Appellants filed a response to the District's motion for summary judgment, but they
did not submit any affidavits or proof in support of their response. Based on the summary-judgment record before us, we conclude there was no genuine issue of material fact and that the
District established as a matter of law that disclosure of its closed session deliberations would have
had a detrimental effect on future negotiations regarding some of the properties discussed. 
Accordingly, we overrule appellants' first three points of error. (4)